NOWICKI *v.* SUDDETH.

1. TRIAL—MOTION FOR DIRECTED VERDICT—EVIDENCE.
  Testimony is construed most favorably for the opposing party on a motion for a directed verdict.

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 53 Am Jur, Trial §§ 332–335.
[2] 53 Am Jur, Trial §§ 158, 231, 232.
[4] 5 Am Jur 2d, Appeal and Error § 558.
[5] 4 Am Jur 2d, Appeal and Error §§ 533, 535.
[6] 53 Am Jur, Trial §§ 510, 513–515.
[7] 53 Am Jur, Trial § 545.
[8, 10] 53 Am Jur, Trial § 539 *et seq.*
[9] 5 Am Jur 2d, Appeal and Error § 894.

2. Negligence—Question for Trier of Fact.

The general rule is that questions of negligence are to be determined by the trier of fact.

3. Automobiles — Negligence — Directed Verdict — Intersection Accident.

Directed verdict against defendant driver on the issue of negligence *held*, proper, where the automobile accident in question occurred as defendant, traveling on a subordinate highway, was attempting to cross traffic on a four-lane arterial highway which had been stopped for a train, defendant admitted that her view was not obstructed and that rather than utilizing her own powers of sight to determine whether it was safe to proceed, she relied upon the judgment of an unknown bystander who motioned for her to proceed, since, under the circumstances, reasonable minds could not differ as to the question of her negligence.

4. Appeal and Error—Court Rules—Objections—Saving Questions for Review.

Interruption of court's charge to the jury to request the giving of an instruction *held*, sufficient and substantial compliance with the applicable court rule to preserve, for appellate review, the question of whether the trial court committed prejudicial error in failing to give such instruction, although such practice is not condoned as exemplary courtroom procedure (GCR 1963, 516.2).

5. Trial—Instructions—Requested Instructions.

Failure to give a requested instruction which is supported by evidence and is a correct statement of applicable law is error.

6. Same—Request to Charge.

The trial court does not have a duty to give an instruction which is erroneous as to facts or as to law.

7. Same—Ambiguity—Request to Charge.

The trial court is not required to give a specific request to charge which is ambiguous.

8. Same—Request to Charge—Ambiguity.

Courts cannot be held to have erred in omitting to give specific requests on subjects covered by the charge actually given because some astute construction may make the request proper, since requests to charge, if granted, are for the instruction of jurors who cannot be supposed to be versed in legal niceties, and a charge not adapted to give them clear ideas, or which is in any way ambiguous, may be properly omitted.

9. APPEAL AND ERROR—INSTRUCTION—THEORY OF CASE.

The appellate review of a charge necessarily requires the consideration of the trial court's instructions in their entirety, and there is no basis for reversal where the instructions, as given, amply present a party's theory to the jury.

10. SAME — INSTRUCTIONS — REQUESTED INSTRUCTIONS — AMBIGUOUS REQUESTS TO CHARGE.

Claim by defendant that the trial court erred in refusing to instruct the jury on a section of the Detroit city code *held*, without merit, where the first portion thereof related to defendant's conduct which was inapplicable and might well have tended to mislead the jury because the court had already determined her negligent as a matter of law, the second portion dealt with plaintiff's conduct which was thoroughly covered by the court's instructions to the jury on contributory negligence, and the court's instructions, in their entirety, adequately presented defendant's theory to the jury, and particularly where a reading of the ordinance might have injected ambiguity defeating the purpose of the instructions.

Appeal from Wayne; Brennan (Thomas E.), J. Submitted Division 1 April 4, 1967, at Detroit. (Docket No. 1,768.) Decided August 1, 1967. Rehearing denied September 8, 1967. Leave to appeal granted December 12, 1967. See 379 Mich 791.

Complaint by Elmer J. Nowicki against Louise Suddeth for damages arising out of a motor vehicle accident. Judgment for plaintiff. Defendant appeals. Affirmed.

*Zeff & Zeff,* for plaintiff.

*Rouse, Selby, Webber, Dickinson & Shaw (James H. Finney,* of counsel), for defendant.

LESINSKI, C. J. The defendant appeals from a judgment entered for the plaintiff in an automobile collision case, and the subsequent denial of her motion for a new trial.

On January 29, 1960, the plaintiff was driving east on Davison avenue, a four-lane, east-west street

in the city of Detroit. The defendant was driving
south on Sherwood, which intersects Davison. When
the defendant reached Davison, the traffic thereon
was backed up from a railroad crossing located west
of Sherwood. The defendant stopped at the stop
sign and after a wait of several minutes started
across Davison. She testified that she looked for
eastbound traffic upon entering the third of the
four lanes, and that she saw the railroad gate going
up. She further testified that as she traveled from
the third to the fourth lane, across Davison, that
she no longer looked to her right (toward east-
bound traffic). According to her testimony, when
she was two car lengths into the intersection, an
unidentified man waved the defendant across Davi-
son. Questioning by the plaintiff's counsel pro-
duced a clear statement by the defendant that she
had relied upon this man's judgment rather than
her own in determining whether she could cross
all four lanes of Davison traffic with safety. Un-
fortunately, his judgment was not without flaw, and
the plaintiff, who was employing the fourth (curb)
lane of Davison to drive eastward, hit the defend-
ant's car. The point of impact was near the south-
west corner of the intersection.

Plaintiff brought a negligence action seeking to
establish defendant's liability for his ensuing in-
juries. Defendant's answer included, as an affirma-
tive defense, allegations of plaintiff's negligence.
Both parties filed demands for jury trial. Plain-
tiff's amended declaration denied any negligence or
contributory negligence on his part. A jury trial
followed.

Prior to the instruction of the jury, the plaintiff
moved for a directed verdict. After argument there-
on, out of the presence of the jury, the court found
that the defendant was negligent as a matter of law.
He so instructed the jury. The trial judge con-

tinued to give instructions on the definition of negligence; however, he left the question of plaintiff's contributory negligence for jury determination. The jury returned a verdict for plaintiff in the amount of $14,000 and judgment was entered thereon. Defendant's subsequent motion for a new trial was denied. Her appeal followed.

We note at this juncture that defendant's motion to file a partial transcript, pursuant to GCR 1963, 812.2(b), was granted. Before us for review, therefore, we have the record on appeal, a partial transcript of the trial testimony which consists of the defendant's testimony,[1] the arguments of counsel and the court's decision regarding plaintiff's motion for directed verdict, and the jury charge. This appeal is limited to two issues. Although opposing appellate counsel phrased them somewhat differently, essentially the questions before us are: whether the trial court erred in directing a verdict for the plaintiff as to defendant's negligence, and whether the trial court erred in refusing to instruct the jury on a section of the Detroit City Code, § 38–3–7(b).[2] The defendant had requested said instruction in writing and orally. This question will be treated more extensively *infra*.

We give initial consideration to the question of the propriety of the directed verdict under the facts of the instant case. It is settled law that, on a mo-

---

[1] Defendant was called as a witness by plaintiff under the opposite party statute, CLS 1961, § 600.2161 (Stat Ann 1962 Rev § 27A.2161). Cross-examination and recross-examination followed.

[2] *"Through highways and stop intersections.* The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway or a stop intersection and shall yield the right-of-way to other vehicles which have entered the intersection from such through highway or which are approaching so closely on such through highway as to constitute an immediate hazard, but such driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on such through highway shall yield the right-of-way to the vehicle so proceeding into or across the through highway."

tion for a directed verdict, the testimony is construed most favorably for the opposing party.

Plaintiff claimed that the defendant, on her own testimony as described above, was negligent as a matter of law. Defendant, in her attempt to refute this assertion, cites the factual situation of *Hakliv* v. *Woznak* (1963), 371 Mich 251, as analogous to the one before us and argues that the law of *Hakliv* is applicable and requires a reversal of the decision below. In *Hakliv, supra,* the trial court refused to direct a verdict for the plaintiff and the Supreme Court affirmed a subsequent jury verdict and judgment entered thereon for the defendant. The pertinent question and defendant's answer thereto were as follows:

"*Q.* Tell us, will you, in your own words just what happened as you approached the intersection of Ennis?

"*A.* As I was approaching the intersection I don't suppose I more than glanced toward the direction of the street Ennis but all of a sudden the boys were in front of me."

The Court held at 254 that this "is no proof of judicial confession of negligence." It further stated at 255 that "it is not possible to conclude from this answer that the defendant was confessing to a failure to make a proper observation before entering the intersection."

The facts in the *Hakliv Case* are markedly distinguishable from those presented by the instant case. In *Hakliv,* the defendant, who was driving an automobile, collided at an intersection with the plaintiff who was a passenger on the back of a bicycle operated by another boy. Defendant's view was obstructed by a four-foot embankment topped with weeds. Plaintiff was almost at the intersection when defendant saw him and applied the brakes, but

failed in her attempt to avoid the ensuing collision. Her answer, repeated above, was, in the Court's words, "a colloquial answer."

In the case at bar, although there were two lanes of traffic stopped at the railroad crossing, the defendant testified that as she entered lane 3 there were no cars between herself and the gate. Her view and her progress across the third lane were neither impeded nor obstructed. Her testimony that she did not continue to look to the right was clear and unequivocal. And, her statement of reliance on the man who waved her on—described by the trial court as "the phantom waver"—was forceful and definite.

"*Q.* Now, whose judgment did you rely upon as you started to cross the street, the man waving you across or your own?

"*A.* The gentleman. When he waved, motioned me to go across I started to cross Davison.

"*Q.* Isn't it a fact that when you entered the two eastbound moving lanes that you at no time formed in your own mind an opinion that those lanes could be crossed with safety; you relied upon this gentleman, did you not, Ma'm? Isn't that true?

"*A.* Yes, I did."

The lack of factual similarity precludes our determining that *Hakliv* controls the decision here.

The defendant also cites *McKinney* v. *Yelavich* (1958), 352 Mich 687. *McKinney* was a pedestrian-auto collision case. The holding therein was that the plaintiff could not be held guilty of contributory negligence as a matter of law. The *McKinney* decision is of no aid to the defendant. Not only is it factually distinguishable, but it also was followed, in effect, by the court below which determined that the question of the *plaintiff's* conduct was for the trier of fact.

Defendant's next authority is *Baker* v. *Alt* (1965), 374 Mich 492. It presented another bicycle-auto situation. At the outset of the opinion, the Court stated at 495:

"What defendant [driver] would have been able to see down the street upon which the cyclist approached was clearly in factual dispute."

Initially, this differs from the instant case. What defendant was able to see was not in factual dispute here. Although *Baker* further states that the question of the driver's negligence is no less one for the jury than is the question of the plaintiff's contributory negligence, this remark is circumscribed by the inclusion of the phrase "under these circumstances."[3] *Baker*, therefore, does not require reversal here.

We do not dispute the law stated in the other cases relied on by defendant. Rather, we find that the fact situation presented by the instant case is one of those exceptions to the general rule that the question of negligence is one for the trier of fact. Reasonable minds could not differ where the defendant admits, in effect, that her view was not obstructed, that she did not utilize her own powers of sight to determine whether it was safe to proceed, but relied instead upon the judgment of an unknown waver. There was no error in the trial court's refusal to permit jury consideration as to defendant's negligence.[4]

---

[3] We note parenthetically that *Baker* v. *Alt* (1965), 374 Mich 492, claims its eminence in the jurisprudence of our State primarily for its determination that an infant under 7 years of age is incapable of contributory negligence.

[4] As recently as *Green* v. *Wallace* (1965), 376 Mich 113, the Michigan Supreme Court has found occasion to affirm a summary judgment for defendant driver whose automobile struck plaintiff pedestrian, where plaintiff's deposition showed him guilty of contributory negligence as a matter of law. Plaintiff's deposition showed that he crossed a street at other than the crosswalk and failed to make proper observation of traffic. There were no unusual cir-

This brings us to the second assignment of error, namely, whether the court below committed reversible error in refusing to instruct the jury as requested by the defendant on the section of the code of the city of Detroit, as set forth in the margin (footnote 2), *supra*.[5] The requested instruction was properly filed. When it became apparent to defense counsel, during the course of the charge, that the trial judge was not going to give this instruction, defense counsel interrupted him and repeated the request orally. The court said:

"Let me handle my charge without any interruption. If I am wrong, then I am wrong. I don't like to get into a lot of extraneous things that are going to cause confusion to the jury."

At the close of his instructions, and prior to the retiring of the jury to consider the verdict, the court asked counsel to approach the bench. An unrecorded conversation between court and counsel ensued, after which the case was submitted to the jury which subsequently held for plaintiff.

We note initially that the defendant's interruption of the charge, which we do not condone as exemplary courtroom procedure, did amount, in effect, to sufficient and substantial compliance with GCR 1963, 516.2, to preserve the question for appellate review. Further, we agree that failure to give a requested instruction which is supported by evidence and is a correct statement of applicable law is error. However, the court does not have a duty to give an instruction which is erroneous as to facts or as to law. We direct attention to defendant's primary authority for his first allegation of error, i.e., *Hakliv* v. *Woznak, supra.*

cumstances to excuse plaintiff's failure to see defendant's car until too late.

[5] We note herein that this section of the code of the city of Detroit was not introduced into evidence.

Additionally, the court is not required to give a specific request to charge which is ambiguous. As the Michigan Supreme Court said some 88 years ago in *Kehrig* v. *Peters* (1879), 41 Mich 475, 480:

"Courts cannot be held to err in omitting to give specific requests on subjects covered by the charge actually given, because some astute construction may make the request proper. Requests to charge if granted, are given for the instruction of juries, who cannot be supposed to be versed in legal niceties. A charge not adapted to give them clear ideas, and which is in any way ambiguous, may be properly laid aside."

It is apparent from the court's response to defense counsel's oral request for this instruction that the rationale for the court's ruling was a determination that this request would have such a tendency. If this reasoning has validity there is no ground for reversal.

The first part of the ordinance refers to the defendant's conduct. Once the court had determined her negligence as a matter of law, this portion became inapplicable and an instruction which included it might well tend to mislead the jury. The second part of the ordinance deals with plaintiff's conduct. The court gave a thorough instruction on contributory negligence to the jury. In our appellate review of a charge, we necessarily consider the instructions in their entirety. Our employment of this guide precludes reversal. The defendant's theory was amply presented to the jury. A reading of the ordinance might have injected ambiguity and would have defeated the *raison d'etre* of instructions to a jury.

Affirmed.

FITZGERALD and J. H. GILLIS, JJ., concurred.